# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

ANASTASIA TANNER,

    Plaintiff,

  v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

Case No. 3:19-cv-00253-SLG

## ORDER RE MOTION TO SEVER AND STAY "BAD FAITH" CLAIMS

Before the Court at Docket 8 is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Sever and Stay "Bad Faith" Claims. Plaintiff Anastasia Tanner responded in opposition at Docket 10. Defendant replied at Docket 11. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

In 2015, Plaintiff was injured in a motor vehicle accident when a driver rear-ended the vehicle in which she was a passenger.[1] At the time, Plaintiff had an insurance policy with Defendant.[2] The parties do not dispute that the accident was

---

[1] Docket 1-2 at 1, ¶ 4.

[2] Docket 8-3.

caused by the driver of the vehicle that struck Plaintiff's vehicle, Corey Kamkoff.[3] With Defendant's consent, Plaintiff settled her claim against Mr. Kamkoff with his insurer for $50,000, the limit of his GEICO liability policy, plus applicable add-ons and fees.[4] As part of her policy with Defendant, Plaintiff had uninsured/underinsured motor vehicle ("UIM") coverage with limits of $100,000/person or $300,000/accident.[5] Thus, after settling her claim against Mr. Kamkoff, Plaintiff sought additional coverage under the UIM provision of her agreement,[6] which provides that "[i]f the damages are caused by an ***underinsured motor vehicle***, then [Defendant] will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply . . . have been used up."[7] The policy further provides that:

> The ***insured*** and [Defendant] must agree to the answers to . . . two questions: (1) Is the ***insured*** legally entitled to recover compensatory damages from the owner or driver of the ***uninsured motor vehicle*** or an ***underinsured motor vehicle***? (2) If the ***insured*** and [Defendant] agree that the answer . . . is yes, then what is the amount of the compensatory damages that the ***insured*** is legally entitled to recover from the owner or driver of the ***uninsured motor vehicle*** or an ***underinsured motor vehicle***? . . .

---

[3] Docket 8 at 2.

[4] Docket 1-2 at 1, ¶¶ 5–6; Docket 8 at 2. *See also* Docket 8-1 and 8-2. Defendant contends that Plaintiff also received an unspecified amount of workers' compensation benefits, and that, therefore, Plaintiff's damages "must exceed both the available liability coverage and the workers' compensation benefits (to the extent they were not repaid from the liability settlement)" to be entitled to UIM benefits. Docket 8 at 2–3.

[5] Docket 8-3 at 2.

[6] Docket 1-2 at 2, ¶ 7.

[7] Docket 8-3 at 22 (emphasis in original).

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 2 of 12

> If there is not agreement on the answer to either question . . . then the ***insured*** shall . . . file a lawsuit, in a state or federal court . . . consent to a jury trial if requested by [Defendant]; [and] agree that [Defendant] may contest the issues of liability and the amount of damages. . . .[8]

Unable to resolve the UIM claim with Defendant, on March 28, 2019, Plaintiff commenced an action against Defendant in the Superior Court for the State of Alaska, Third Judicial District, asserting, *inter alia*, breach of contract, unreasonable evaluation/investigation and payment of Plaintiff's claim, and negligent and/or reckless adjustment, and seeking recovery of UIM benefits as well as punitive damages.[9] On September 18, 2019, Defendant removed the case to this Court on the basis of diversity jurisdiction.[10] On October 28, 2019, Defendant moved to sever and stay Plaintiff's "bad faith" claims.[11] On November 12, 2019, Plaintiff responded in partial opposition; Plaintiff agreed to bifurcate the trial into

---

[8] Docket 8-3 at 22–23 (emphasis in original).

[9] Docket 1-2 at 2–3, ¶¶ 10–14, 16–17; Docket 1-2 at 5, ¶¶ 33–34.

[10] Docket 1 at 1. On September 18, 2019, Defendant also removed to this Court a similar case brought by Plaintiff Julia Thogmartin. Case No. 3:19-cv-252 at Docket 1. On October 28, 2019, the same day it filed the current motion, Defendant moved to sever and stay Ms. Thogmartin's "bad faith" claims. Case No. 3:19-cv-252 at Docket 10. Defendant's arguments in support of that motion are substantially similar to those made in the current motion, as were the arguments in opposition made by Plaintiff's counsel. On January 22, 2020, the Court granted in part and denied in party Defendant's motion; the Court's reasoning in this order closely tracks the reasoning in that prior order. Case No. 3:19-cv-252 at Docket 19.

[11] Docket 8. Defendant refers to Plaintiff's allegations that Defendant's "evaluation and handling of her UIM claim [w]as 'unreasonable,' 'negligent[],' 'reckless,' and 'lack[ing] an objectively reasonable basis," as Plaintiff's "bad faith" claims. Docket 8 at 4 (alterations in original).

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 3 of 12

two phases before the same jury, but opposed Defendant's request to stay "bad faith" discovery.[12]

## DISCUSSION

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."[13] Additionally, under Rule 21, the Court can sever "any claim against a party."[14]

Defendant asks the Court to do both—to sever Plaintiff's "bad faith" claims from her UIM claim and to order separate trials—and asks the Court to stay discovery on the "bad faith" claims until the UIM claim is resolved.[15] Citing to orders from this Court[16] and others severing and staying "bad faith" claims from

---

[12] Docket 10 at 1.

[13] Fed. R. Civ. P. 42.

[14] Fed. R. Civ. P. 21.

[15] Docket 8 at 1–2.

[16] *See Allen v. State Farm Mut. Auto. Ins. Co.*, No. 3:15-cv-0019-HRH (D. Alaska March 5, 2015) (Docket 8-7) (granting unopposed motion to sever and stay bad faith claims); *Seals v. State Farm Mut. Auto. Ins. Co.*, 3:14-cv-00059-JWS (D. Alaska Nov. 7, 2014) (Docket 8-6) (concluding that "failure to sever the bad faith claims from the UIM claim would substantially prejudice" the insurer); *Lashley v. Horace Mann Teachers Ins., Inc.*, No. 3:12-cv-00197-RRB (D. Alaska Apr. 10, 2013) (Docket 8-4) (bifurcating breach of contract and bad faith claims and staying bad faith discovery); *Mixscooke v. Geico Casualty Co.*, No. 3:12-cv-0166-HRH (D. Alaska Dec. 4, 2012) (Docket 8-5) (finding that "[b]ecause the court perceives the plaintiff's claims to be factually and legally independent of one another, and because a determination of the value of plaintiff's bodily injury claim may obviate the necessity for litigating the plaintiff's breach of good faith claim, this is an appropriate case for bifurcation of those claims" and that undertaking bad faith discovery "will not be economical because that discovery may not be necessary.").

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 4 of 12

UIM claims, Defendant contends that doing so will be more economical, and will avoid undue prejudice to Defendant.[17]

On the question of efficiency, Defendant maintains that the discovery and evidence required to resolve a UIM claim—which likely includes details of the accident, medical reports, and damages evidence—is distinct from that required to resolve "bad faith" claims—which "routinely require disclosure of everything from reserves to claims adjuster mental impressions."[18] Defendant explains that, should it prevail on or settle the UIM claim with Plaintiff, then the parties will have saved the time and expense of discovery and trial on the "bad faith" claims.[19] Indeed, Defendant predicts—based on prior such cases—that Plaintiff will drop the "bad faith" claims after a trial on the UIM claim.[20] Defendant adds that even if the parties ultimately try the "bad faith" claims, the additional cost of bifurcation would be limited to the time needed to pick a second jury.[21]

---

[17] *See O'Malley v. U.S. Fidelity and Guaranty Co.*, 776 F.2d 494 (5th Cir. 1985); *Nistrian v. Geico Ins. Co.*, No. C16-5374-BHS, 2016 U.S. Dist. LEXIS 86867 (W. D. Wash. July 5, 2016); *Smith v. Westfield Ins. Co.*, 932 F. Supp. 770 (S.D. W. Va. 1996); *In re United Fire Lloyds*, 327 S.W.3d 250 (Tex. App. 2010); *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668 (Tex. Ct. App. 1993); *State Farm Mut. Auto. Ins. Co. v. Wilborn*, 835 S.W.3d 260 (Tex. Ct. App. 1992).

[18] Docket 8 at 5–6. Defendant further explains that evidence for the UIM claim "would involve testimony from the plaintiff, perhaps an accident reconstruction expert, treating doctors, perhaps an IME doctor, perhaps other experts," whereas the evidence for the "bad faith" claims "could consist of testimony from [Defendant's] claims personnel, expert witnesses on insurance claims handling and documentation." Docket 11 at 8.

[19] Docket 8 at 8–9.

[20] Docket 8 at 8.

[21] Docket 8 at 9.

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 5 of 12

As to prejudice, Defendant maintains that a jury would be improperly influenced by exposure to evidence on the "bad faith" claims, which, by "its very nature would prejudice the outcome of a trial on the UIM claim."[22] Moreover, Defendant maintains that it would be "fundamentally unfair" to require "an insurer to disclose how it is evaluating a UIM claim, as well as its reserve information, before the UIM claim is even resolved."[23] Defendant likened such disclosure to "requiring Plaintiff to disclose what she thinks her claim is really worth and what she would take for a settlement."[24] Indeed, Defendant contends that Plaintiff alleged "bad faith" for the very purpose of obtaining irrelevant discovery in an effort to influence the outcome of the UIM claim.[25] Defendant emphasizes that, with respect to prejudice, the question for the Court is whether Defendant will be prejudiced if severance is not granted, and not whether Plaintiff would be prejudiced if it is.[26] Nevertheless, Defendant maintains that severing and staying the "bad faith" claims will alleviate its concerns while still allowing Plaintiff to bring the "bad faith" claims, should she wish to do so after the UIM claim is resolved.[27]

---

[22] Docket 8 at 6.

[23] Docket 8 at 6.

[24] Docket 8 at 6.

[25] Docket 8 at 7.

[26] Docket 11 at 3.

[27] Docket 8 at 7.

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 6 of 12

In her partial opposition, Plaintiff advocates for a two-phase trial before a single jury, which she contends would prevent any prejudice to Defendant without unduly burdening Plaintiff with the expense and time of an entirely separate "bad faith" discovery and trial phase.[28] Plaintiff maintains that complete bifurcation of her "bad faith" claims "causes more harm than bifurcation with the same jurors hearing the claims in two separate phases."[29] Plaintiff adds that complete bifurcation "contravenes the policy of judicial economy set forth in the bifurcation rule,"[30] citing recent decisions from this Court and others declining to stay "bad faith" discovery pending resolution of a UIM claim.[31] Plaintiff acknowledges the potential prejudice to Defendant of a trial on the UIM and "bad faith" claims at the same time, but urges that it is best mitigated through bifurcation of a single trial

---

[28] Docket 10 at 1–2.

[29] Docket 10 at 6.

[30] Docket 10 at 6–7.

[31] Docket 10 at 4, 7, 9. *See Stowers v. State Farm Mut. Auto Ins. Co.*, 3:15-cv-00088-JWS (D. Alaska Sept. 10, 2015) (Docket 10-2) (ordering that "[d]iscovery on the bad faith claims will proceed at the same time as discovery on the UM benefits claim [and] [a]t trial on the UM benefits claim, none of the bad faith evidence will be admitted. After resolution of the UM benefits claim, if the bad faith claim remains viable, it will then be tried to the same jury which heard and decided the UM benefit claim."); *Overcast v. Gov. Employees Ins. Co.*, 1JU-10-00486CI (Alaska Sup. Ct. Nov. 12, 2019) (Docket 10-3) (concluding that "potential prejudice to [insurer] and the policy of judicial economy do not necessitate bifurcation of the bad faith and contract claims into separate proceedings or compel a stay of discovery . . . [h]owever, bifurcation of a single trial into separate phases does appear to be appropriate."); *Han v. State Farm Mut. Auto. Ins. Co.*, 3AN-18-10703CI (Alaska Sup. Ct. Oct. 3, 2019) (Docket 10-4) (concluding that "Plaintiff would be more burdened by two separate trials than would Defendant" and that "there is a chance that bifurcation might ultimately contravene the policy of judicial economy were State Farm not to prevail during the first trial."); *Galvin v. State Farm Fire and Casualty Co.*, 3AN-14-10038CI (Alaska Sup. Ct. Nov. 17, 2015) (Docket 10-1) (declining to sever UIM and bad faith claims or stay bad faith discovery because they are "factually intertwined" where the policy amount was disputed).

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 7 of 12

into separate phases, before a single jury.[32]  However, Plaintiff disputes that Defendant will be prejudiced by producing "bad faith" discovery at this stage. Plaintiff maintains that she is entitled to "bad faith" discovery,[33] characterizing Defendant's request for a stay as an attempt to reap the benefits of affirmative discovery from its policyholders without having to produce discovery "where it may be vulnerable."[34]  Finally, Plaintiff contends that Defendant is "exaggerat[ing] the onerous nature of the [bad faith discovery] disclosures," emphasizing that Defendant routinely produces such discovery in an increasing number of similar litigations.[35]

In its reply brief, Defendant acknowledges that Plaintiff is entitled to "bad faith" discovery "once the bad faith claims are ripe," but contends that they are "not ripe at this juncture."[36]  Defendant maintains that it will be prejudiced if forced to undergo "bad faith" discovery before the UIM claim is resolved, citing to the Court

---

[32] Docket 10 at 7.

[33] Docket 10 at 4, 8–10.  Plaintiff emphasizes that claimants are allowed to pursue "bad faith" claims even where they have resolved or settled their UIM claims.  Docket 10 at 4–5 (citing *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691 (Alaska 2014)).

[34] Docket 10 at 7–8.

[35] Docket 10 at 9.  Plaintiff contends that the number of claims like hers against Defendant is increasing because Defendant "eliminated alternative dispute resolution language in its policies and requires its policyholders to file these UIM lawsuits to dispute any adjuster evaluation." Docket 10 at 9.

[36] Docket 11 at 8–9.

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 8 of 12

of Appeals of Wisconsin's decision in *Dahmen v. American Family Mutual Insurance Company*.[37] There, the Court of Appeals reversed the trial court's denial of bifurcation and stay of discovery on the bad faith claims, concluding that:

> (1) the failure to bifurcate a claim of bad faith from an underlying claim for UIM benefits would significantly prejudice [Defendant]; (2) the two distinct claims present differing evidentiary requirements that increase the complexity of the issues and the potential for jury confusion; and (3) a separate initial trial on the claim of UIM benefits increases the prospect of settlement and promotes economy by narrowing the issues for the jury and potentially eliminating the need for a later trial on the bad faith claim.[38]

However, *Dahmen* is inapposite; there, the trial court did not bifurcate the claims at all, relying instead on its jury instructions to remedy any prejudice.[39] In reversing the trial court, the Court of Appeals explained that it was "not satisfied that the use of properly drafted jury instructions and a special verdict will sufficiently remedy the prejudice that would likely result if the two claims are litigated in a single trial," concluding that "the risk for jury confusion and prejudice . . . is substantial."[40] Here, Plaintiff does not oppose bifurcation of the issues at trial, thereby removing any such risk.

In deciding whether to bifurcate Plaintiff's claim, the Court weighs the parties' concerns of judicial economy and prejudice. The parties raise competing

---

[37] Docket 11 at 4–6 (citing *Dahmen*, 635 N.W.2d 1 (Wis. App. 2001)).

[38] *Dahmen*, 635 N.W.2d at 6–7.

[39] *Id.* at 3.

[40] *Id.* at 6.

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 9 of 12

efficiency considerations. Defendant maintains that there is a strong likelihood that resolution of the UIM claim will obviate the need for discovery or for trial on the "bad faith claims."[41] Plaintiff, on her end, seeks to avoid the time and expense of two discovery phases and two trials, and maintains that Defendant can produce "bad faith" discovery without undue burden.[42] Moreover, because Plaintiff agrees to a two-phase trial—thereby obviating concerns that the jury would be improperly swayed by the "bad faith" evidence—Defendant's remaining concern is the prejudice to its defense against the UIM case of having to disclose in discovery how it evaluates a UIM claim and its reserve information.[43]

Both parties were able to cite non-precedential case law in support of their respective positions. However, the Court finds the reasoning in *Overcast v. Government Employees Insurance Company* persuasive.[44] The Superior Court for the State of Alaska, First Judicial District, concluded that "bifurcation might ultimately contravene the policy of judicial economy . . . 'if [the insurer] does not prevail, the Court is faced with two voir dires, two phases of discovery and another round of seemingly endless motion filing and responses, all in addition to two separate trials."[45] The state court concluded that "[w]hile the potential prejudice to

---

[41] Docket 8 at 8–9.

[42] Docket 10 at 9.

[43] Docket 11 at 2.

[44] 1JU-10-00486CI (Alaska Sup. Ct. Nov. 12, 2019); Docket 11-3.

[45] *Id.* at 2 (quoting *Light v. Allstate Ins. Co.*, 182 F.R.D. 210 (S.D. W. Va. 1998)).

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 10 of 12

[the insurer] is real, it is best mitigated through bifurcation of a single trial, before a single jury, into separate stages."[46] The Court agrees and finds that the goal of judicial economy is best served by bifurcating Plaintiff's claims before a single jury. Given the schedule proposed by both parties and largely adopted by the Court—with close of fact discovery in September 2020 and trial scheduled to begin in February 2021—the parties should have sufficient time to complete discovery on both issues within that time frame.[47]

Finally, while the Court recognizes Defendant's concern about producing "bad faith" discovery before the UIM claim is resolved, Plaintiff is entitled to discovery on the "bad faith" claims so long as they remain a part of the case. Moreover, as the Alaska Supreme Court has explained, there is a "special relationship between the insured and the insurer in the insurance context," and "bad faith" claims sounding in tort provide the "needed incentives to insurers to honor their implied covenant to the insured."[48] Thus, while Defendant understandably does not want to disclose information about its settlement practices, evaluations, or reserves to Plaintiff before resolving the UIM claim, such

---

[46] *Id.*

[47] Docket 14 and Docket 17.

[48] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014) (quoting *State Farm Fire & Gas. Co. v. Nicholson*, 777 P.2d 1152, 1156 (Alaska 1989)).

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 11 of 12

disclosure is a natural consequence of the parties' unique relationship and of Defendant's reliance on courts to resolve disputed UIM claims.[49]

For the above reasons, the Court grants Defendant's request to bifurcate Plaintiff's UIM claim from its "bad faith" claims at trial, insofar as the parties will first try the UIM claim, and only upon its resolution, then try the "bad faith" claims before the same jury. The Court denies Defendant's request to stay "bad faith" discovery.

## CONCLUSION

In light of the foregoing, Defendant's Motion to Sever and Stay "Bad Faith" Claims at Docket 8 is GRANTED in part and DENIED in part. Discovery on the "bad faith" claims may proceed at the same time as discovery on the UIM claim; however, at a trial on the UIM claim, none of the "bad faith" evidence will be admitted. After resolution of the UIM claim, if the "bad faith" claim remains viable, it will then be tried to the same jury which heard and decided the UIM claim.

DATED this 24th day of January, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[49] Docket 8-3 at 23 (State Farm policy providing that if there is no agreement as to the amount of compensatory damages, the insured "shall . . . file a lawsuit in a state or federal court that has jurisdiction").

Case No. 3:19-cv-00253-SLG, *Tanner v. State Farm*
Order re Motion to Sever and Stay "Bad Faith" Claims
Page 12 of 12